**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

NEAL P. GOULAS                                                    CIVIL ACTION

VERSUS                                                           NO. 12-898

CHARLES P. LAGRECA, JR., ET AL.                                  SECTION "L" (2)

<u>ORDER AND REASONS</u>

The Court has pending before it Defendants' Motion for Summary Judgment. (Rec. Doc. 47). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.      BACKGROUND**

**A.      Facts**

Plaintiff Neal Goulas brings this action for unpaid overtime and wrongful termination against his former employer, Defendant LaGreca Services, Inc. ("Services"), doing business as LaGreca Transportation, and its owner, Defendant Charles P. LaGreca, Jr. ("LaGreca"). The uncontested facts in the case are as follows. LaGreca is Plaintiff's uncle and the founder of Services, a horizontal directional drilling company. Services employs crews of four to six employees, who perform drilling work. Plaintiff began working on one of these crews in February 2007.

In either late 2007 or early 2008, Plaintiff was promoted to the position of superintendent and received a corresponding pay increase. Plaintiff also worked as a superintendent from mid-2009 until May 2010. There is some dispute over the extent of Plaintiff's job responsibilities as superintendent, but it is undisputed that he was responsible for drafting daily reports and

documenting the progress of his crew, as well as tracking and ensuring that the crew had

sufficient supplies and materials for their work. While working for Services, Plaintiff was paid

on a weekly basis. The number of hours that Plaintiff and other Services employees worked

would vary from week to week. Defendants claim that Plaintiff was guaranteed an annual

income of $65,000 regardless of the number of hours he worked, but Plaintiff disputes this

assertion.

      Plaintiff's employment was terminated in May 2010, following the hiring of another

employee, John Lyons. Plaintiff had objected to the hiring of Mr. Lyons, and had voiced this

opinion to LaGreca. The facts surrounding that conversation remain in dispute, but it is

undisputed that soon after Mr. Lyons was hired, Plaintiff accidentally called LaGreca, and

LaGreca overheard him making critical comments about Mr. Lyons. The next day, LaGreca met

with Plaintiff. During the meeting, Plaintiff complained to LaGreca about alleged drug use by his

co-worker, although Plaintiff never threatened to disclose the violation of any law by Services to

a third party. By the end of that meeting, Plaintiff's employment with Services had ended

## B.   Procedural History

      Plaintiff brought suit on October 18, 2010 in the 32nd Judicial District Court for the

Parish of Terrebonne. His Petition for Damages alleges that he was never compensated for 20 or

more hours of overtime that he was working each week. (Rec. Doc. 1-1 at p. 2, ¶ 2).

Furthermore, Plaintiff alleges that he was fired in retaliation after he reported a safety violation

and/or the use of drugs on the premises. *Id.* at ¶ 3. He requests "past due wages, vacation pay,

bonus, penalty wages, and attorney fees pursuant to Louisiana law." *Id.* at p. 3, ¶ 9.

      On November 4, 2010, Defendants filed Dilatory and Peremptory Exceptions, alleging,

essentially, that Plaintiff had incorrectly named the Defendants in his Petition. *Id.* at pp. 5-6.

Plaintiff amended his Petition to remedy this deficiency, *id.* at pp. 8-9, and Defendants filed an

Answer and Reconventional Demand, alleging that Plaintiff was a salaried exempt employee and

that no safety violation had occurred, *id.* at pp. 13-14, ¶¶ 2-3. Defendants brought their

Reconventional Demand against Plaintiff and his wife, Jennifer Goulas, based on a balance

allegedly due on a promissory note and for various other allegedly unpaid personal loans. *Id.* at

pp. 15-16, ¶¶ 9-13.

On March 8, 2012, the Plaintiff and Mrs. Goulas filed Peremptory Exceptions in response

to LaGreca's reconventional demand. *Id.* at pp. 20-27. In that filing, the Goulases indicated for

the first time that Plaintiff was bringing suit for "Failure to Pay Overtime in accordance with the

Fair Labor Standards Act." *Id.* at p. 22. On April 5, 2012, Defendants removed the case to this

Court, asserting federal question jurisdiction. (Rec. Doc. 1 at ¶ 14). This Court previously

granted Defendants leave to amend their counterclaims (Rec. Doc. 18), but on April 1, 2013,

after Defendants conceded that the Court lacked subject matter jurisdiction, all counterclaims

except the claim for unpaid salary advances were remanded to state court. (Rec. Doc. 46).

## II.   PRESENT MOTION

Defendants now file this Motion for Summary Judgment on Plaintiff's claims. (Rec. Doc.

47). Defendants' main argument is that Plaintiff was exempt from FLSA under both the

executive exemption and the administrative exemption. Furthermore, Defendants argue that

some of Plaintiff's claims are barred by the statute of limitations. Defendants also argue that

summary judgment is warranted on Plaintiff's whistleblower claims and Plaintiff's claims

against LaGreca individually, due to legal defects in those claims. Plaintiff opposes the motion

and argues that he was not actually exempt under either exemption cited by Defendants, that Defendants' willful conduct means that a longer limitations period applies, and that Plaintiff's whistleblower claims and claims against LaGreca individually are legally adequate.

## III.   LAW AND ANALYSIS

### A.   Standard on Motions for Summary Judgment

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(e)).  The mere argued existence of a factual dispute will not defeat an otherwise properly

supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not

significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

Partial summary judgment dismissing only certain claims is appropriate under the same

standards. *See* Fed. R. Civ. P. 56(d).

**B.    Analysis**

**1.    Executive Exemption**

Defendants' first argument in support of a grant of summary judgment is that Plaintiff

qualified for both the executive and the administrative exemptions to FLSA. Pursuant to 29

U.S.C. § 213(a)(1), "any employee employed in a bona fide executive, administrative, or

professional capacity" is exempt from the general overtime requirements located in 29 U.S.C.

§ 207. For the purpose of FLSA, an executive is defined as any employee:

> (1) Compensated on a salary basis at a rate of not less than $455
> per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which
> the employee is employed or of a customarily recognized
> department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more
> other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose
> suggestions and recommendations as to the hiring, firing,
> advancement, promotion or any other change of status of other
> employees are given particular weight.

29 C.F.R. § 541.100.

**a.    Salary Basis**

FLSA's accompanying regulations clarify that an employee is paid on a "salary basis" as

long as the employee regularly receives "a predetermined amount constituting all or part of the

5

employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). However, "[e]xempt employees need not be paid for any workweek in which they perform no work." *Id.* Furthermore, an employer may deduct an employee's pay for full-day absences without affecting the employee's salaried status. *Id.* § 541.602(b)(1). Deductions for half-day absences are not permitted. *Id.*

Defendants argue that Plaintiff meets this requirement, as the relevant payroll records reflect that Plaintiff's net pay was above $455 per week. (Rec. Doc. 47-4 at 4-6). However, Plaintiff disputes this point. First, Plaintiff argues that he was required to work a certain number of hours per week in order to receive his pay, meaning that his work was "subject to reduction because of variations in the . . . quantity of the work performed." 29 C.F.R. § 541.602(a). In support of this point, Plaintiff cites the testimony of Carole Prevost, Services' office manager, that employees have to work either 68 or 68.5 hours per week in order to receive their "guaranteed paycheck." (Prevost Dep. at 11, Rec. Doc. 49-2 at 4). Second, Plaintiff argues that he was subject to partial pay docks, which is sufficient to prevent him from qualifying as a salaried employee. In support of this argument, Plaintiff cites Services' employee handbook, which states that any employee's pay will be docked by one half-day if the employee either (1) is caught sleeping on the job or (2) arrives more than 10 minutes late, but less than one hour late. (Rec. Doc. 49-7 at 9-10). Plaintiff further argues that he was actually subject to one of these partial pay docks for tardiness during the week of August 10, 2009. (Rec. Doc. 47-4 at 6).

Defendants respond by arguing, first, that Plaintiff admits in his Statement of Contested Material Facts that he was "guaranteed . . . a salary of exactly $65,000." (Rec. Doc. 49-1 at

¶ 19). <u>Second</u>, Defendants argue that although Plaintiff's pay was docked by $100 during the week of August 10, 2009, Plaintiff has not provided the Court with sufficient evidence demonstrating that this docking occurred due to tardiness, rather than a proper justification for exempt employees. Defendants also argue that the employee handbook is inadmissible because Plaintiff has not provided supporting affidavits establishing its admissibility or authenticity.

Defendants are correct that the employee handbook, as currently submitted, is not admissible, and therefore the Court will disregard it for the purpose of adjudicating this motion. Furthermore, the Court acknowledges that most of the evidence in the record points toward a conclusion that Plaintiff was paid on a salary basis. Nonetheless, the Court believes that a genuine issue of material fact remains on this issue. The testimony of Carole Prevost casts some doubt on whether Plaintiff's pay was subject to reduction for variations in the quantity of work he performed. Additionally, certain testimony by LaGreca suggests that Plaintiff's compensation did have a more significant relationship to the number of hours he actually worked.[1] Furthermore, the Court assumes that the sentence that Defendants cite from Plaintiff's Statement of Contested Material Facts is a typographical error, since Plaintiff's brief clearly contests the

---

[1] Specifically, LaGreca testified:

> Well, remember, Neal is paid to work 68 and a half and 68 hours every week. And if you look right here, Neal was paid, in 2010, to work 1160 hours. He only logged 905. *So we got 260 hours he actually owes me; he got paid for and he didn't work.* In 2009, the one year before, he was paid to work 3549 hours, he worked 2973. . . . *So he owes me about 600 hours for 2009.*

(LaGreca Dep. at 54, Rec. Doc. 47-5 at 10) (emphasis added).

assertion that his pay was guaranteed.[2]

In a FLSA case, the employer bears the burden of proving an employee's exempt status, and moreover, exemptions must be construed narrowly in favor of the employee. *E.g.*, *Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522, 526 (5th Cir. 2004) (citations omitted). In light of this fact, as well as the other remaining factual disputes described below, the Court finds it is appropriate to deny summary judgment to Defendants.

      **b.**     **Primary Duty**

The second requirement for FLSA's executive exemption is that the employee's "primary duty" must be "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a)(2). Examples of "management" duties include "directing the work of employees; maintaining production or sales records for use in supervision or control; . . . planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; . . . [and] providing for the safety and security of the employees or the property." *Id.* § 541.102. When determining an employee's "primary duty," a Court should consider

> the relative importance of the exempt duties as compared with
> other types of duties; the amount of time spent performing exempt
> work; the employee's relative freedom from direct supervision;
> and the relationship between the employee's salary and the wages
> paid to other employees for the kind of nonexempt work performed

---

[2] Defendants assert in their Statement of Undisputed Facts that "Services guaranteed [Goulas] an annual income of approximately $65,000." (Rec. Doc. 47-2 at ¶ 19). In response, Plaintiff writes: "Denied. Plaintiff moves to strike as record does not support such facts. LaGreca guaranteed Goulas a salary of exactly $65,000. (Goulas Tr. 119:11-13)." (Rec. Doc. 49-1 at ¶ 19).

by the employee.

*Id.* § 541.700(a). Furthermore, "[a] customarily recognized department or subdivision must have a permanent status and a continuing function," *id.* § 541.103(a), but it "need not be physically within the employer's establishment and may move from place to place," *id.* § 541.103(c).

As an exception to these general rules, "manual laborers" and "other 'blue collar' workers who perform work involving repetitive operations with their hands, physical skill, and energy" are not eligible for the executive exemption as a matter of law. 29 C.F.R. § 541.3(a). "Such nonexempt 'blue collar' employees gain the skills and knowledge required for performance of their routine manual and physical work through apprenticeships and on-the-job training, not through the prolonged course of specialized intellectual instruction required for exempt learned professional employees such as medical doctors, architects and archeologists." *Id.* Thus, "non-management production-line employees and non-management employees in maintenance, construction and similar occupations" are not included in the executive exemption. *Id.*

Defendants argue that Plaintiff meets the "primary duty" requirement because he supervised a drilling crew, which can qualify as a "subdivision of an enterprise" under FLSA. *See Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 708 (S.D. Tex. 2012). Defendants cite various testimony in support of this claim. First, they cite the testimony of LaGreca, who refers to Plaintiff as a "working superintendent" and further describes Plaintiff's duties as follows:

> As superintendent, you need to manage the crew. you need to keep track of their hours. You need to, you know, fill out the reports for the day. You need to, you know, make sure the job goes well, run the job. Something's broke, to make sure it gets fixed. If

> something is forgotten or, not forgotten, but something is needed
> to make the job go well, you need to get it. I mean, you need to run
> the job, whatever needs to be done.

(LaGreca Dep. at 17-18, Rec. Doc. 47-5 at 4). Next, Defendants cite the testimony of Plaintiff,

who confirms that as a superintendent, he was "responsible for making sure that everything gets

done correctly," including making sure that all equipment is set up correctly and that certain

safety requirements are met. (Goulas Dep. at 81, Rec. Doc. 47-6 at 12). Furthermore, Plaintiff

testifies that LaGreca was usually not present in the field and would visit an average of once per

week for approximately 30-60 minutes. (Goulas Dep. at 82-83, Rec. Doc. 47-6 at 13).

Defendants also note that Plaintiff was responsible for writing and sending daily reports on his

team's activities. (Goulas Dep. at 85-86, Rec. Doc. 47-6 at 13-14). Finally, Defendants note that

Plaintiff was paid significantly more than the other non-superintendent employees, who were

paid on an hourly basis. (Goulas Dep. at 58-59, 118-119, Rec. Doc. 47-6 at 9, 17).

      In response, Plaintiff argues that his primary duties were actually those of a blue collar

manual laborer, and therefore, he is not included in the executive exemption pursuant to 29

C.F.R. § 541.3(a). In support of this contention, Plaintiff cites LaGreca's testimony that Plaintiff

"wasn't just a finger pointer" but "also had to do the work." (LaGreca Dep. at 18, Rec. Doc. 47-5

at 4). Plaintiff argues that his duties included running the locator, which required him to "walk

with [the box] and . . . electronically pick up where [the] drill stem is" and indicate with paint

where it was located; running drilling rigs; driving trucks; and washing equipment. (LaGreca

Dep. at 14-16, Rec. Doc. 49-3 at 5). Plaintiff also notes that according to LaGreca, the daily

reports took only a few minutes for Plaintiff to complete. (LaGreca Dep. at 19, Rec. Doc. 47-5 at

4). Plaintiff cites an old case in which a "working foreman" was held not to be exempt under

FLSA because more than 20 percent of his work involved non-exempt duties. *Walling v. Jacksonville Paper Co.*, 69 F. Supp. 599, 606 (S.D. Fla. 1947) *aff'd sub nom. Jacksonville Paper Co. v. McComb*, 167 F.2d 448 (5th Cir. 1948), *rev'd*, 336 U.S. 187 (1949).

Defendants respond to these points by noting that the majority of the testimony describing Plaintiff's manual labor duties refers to the very beginning of Plaintiff's employment with Services, before he had been promoted to the position of superintendent. (LaGreca Dep. at 13-14, Rec. Doc. 49-3 at 5). Defendants also emphasize that Plaintiff does not dispute that his duties included at least some management responsibilities. Next, Defendants argue that the case Plaintiff cites was decided under an outdated standard. *See* 29 C.F.R. § 541.700(b) (noting that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," but "[t]ime alone . . . is not the sole test," and there is no requirement that an employee spend 50 percent of his or her time performing exempt work).

Again, the Court acknowledges that certain portions of the Plaintiff's argument are problematic, but it nonetheless concludes that this is a factual issue that must be reserved for the factfinder at trial. Certain factors listed under § 541.700(a)—namely, freedom from direct supervision and discrepancy in pay—seem to weigh in favor of finding that the primary duty requirement is met in Plaintiff's case. However, with respect to the other two factors listed in that section—"the relative importance of the exempt duties as compared with other types of duties" and "the amount of time spent performing exempt work"—the record is not sufficiently clear. Too many of the relevant facts remain in dispute for the Court to grant summary judgment at this time.

c.       **Direction of Other Employees**

There appears to be no dispute that this requirement is met. Defendants argues that Plaintiff meets this requirement because he regularly supervised at least three crew members. (Goulas Dep. at 42-43, 137, Rec. Doc. 47-6 at 7, 18). Although Plaintiff denies in his Statement of Contested Material Facts that he regularly directed the work of at least two employees (Rec. Doc. 49-1 at ¶ 9), he makes no argument to the contrary in his brief and appears to concede that he had at least some supervisory responsibilities. However, a grant of summary judgment regarding the executive exemption is not appropriate due to the contested factual issues relating the other three factors.

d.       **Hiring and Firing**

As noted above, an employee is not required to have direct hiring and firing power in order for this requirement to be met; it is sufficient that the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). Defendants argue that this requirement is met because LaGreca initially refused to hire John Lyons due to Plaintiff's recommendation, and ultimately required that Lyons prove himself by "doing some odd jobs around [LaGreca's] house" before hiring him on a more permanent and full-time basis. (LaGreca Dep. at 20-22, Rec. Doc. 47-5 at 4-5). Defendants also cite Plaintiff's testimony suggesting that LaGreca wanted Plaintiff "to run the company one day." (Goulas Dep. at 68, Rec. Doc. 47-6 at 11). Plaintiff opposes this point and characterizes the hiring of Lyons differently, noting that when Plaintiff opposed the hiring of Lyons, he actually threatened to quit

if Lyons was hired, at which point LaGreca testified that he said: "Neal, don't put me in that

position. Don't tell me what to do with my company." (LaGreca Dep. at 21, Rec. Doc. 47-5 at 5).

Defendants reply to this argument by emphasizing that it is undisputed that "Services did

not initially hire Lyons based in part on Goulas' opinion." (Rec. Doc. 53 at 3-4). However, the

Court doubts that a single instance of an employer giving weight to an employee's opinion on

hiring and firing is sufficient to meet this requirement, and neither party provides uncontested

evidence that LaGreca gave particular weight to Plaintiff's recommendations at any other time.

Accordingly, the Court will deny summary judgment on this issue.

**2.      Administrative Exemption**

The administrative exemption includes any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than
> $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or
> non-manual work directly related to the management or general
> business operations of the employer or the employer's customers;
> and
>
> (3) Whose primary duty includes the exercise of discretion and
> independent judgment with respect to matters of significance.

*Id.* § 541.200. As noted above, genuine issues of material fact remain with respect to (1) whether

Plaintiff was compensated on a salary basis and (2) the nature of Plaintiff's "primary duty" as a

superintendent for Services. Accordingly, the Court will deny summary judgment on the

administrative exemption as well.

**3.      FLSA Statute of Limitations**

"A [FLSA] cause of action accrues at each regular payday immediately following the

work period during which the services were rendered for which the wage or overtime

13

compensation is claimed." *Haferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 271, *modified on reh'g*, 826 F.2d 2 (5th Cir. 1987). Claims for FLSA violations must be brought "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commence within three years after the cause of action accrued." 29 U.S.C. § 255.

Plaintiff filed his original Petition for Damages on October 18, 2010. (Rec. Doc. 1-1 at 4). Accordingly, Defendants argue that any claims arising out of Plaintiff's employment before October 18, 2008 are barred by the statute of limitations. Plaintiff brings claims for allegedly unpaid overtime that he worked "since 2007." (Rec. Doc. 1-1 at p. 8, ¶ 2). Defendants argue that all claims arising from Plaintiff's employment before October 12, 2008 are barred because October 23, 2008 is the last pay date within the two-year statute of limitations, and on that date, Plaintiff was paid for work done from October 12-18, 2008.

Plaintiff responds that his claims should not be barred, because Defendants' violation was willful, in that Services "knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988) (adopting *Thurston* standard for FLSA claims). In support of this argument, Plaintiff cites the testimony of Carole Prevost relating to the calculation of worker's compensation premiums. (Prevost Dep. at 16-21, Rec. Doc. 49-2 at 6-7). Specifically, Ms. Prevost describes the Services compensation scheme as involving a base rate of pay for the first 40 hours an employee works, and overtime pay (double or triple time) for hours worked over that amount. With respect to Plaintiff specifically, Ms. Prevost testified that Plaintiff's pay was based on a 68-hour week, and that Plaintiff received "$10 an hour for 40 hours" and "$30 an hour for 28 hours." (Prevost Dep. at 21, Rec. Doc. 49-2

14

at 7).

Based on this testimony, Plaintiff alleges that Services used a "split-day plan" compensation scheme in violation of FLSA:

> (a) . . . Under this plan the normal or regular workday is artificially divided into two portions one of which is arbitrarily labeled the "straight time" portion of the day and the other the "overtime" portion. Under such a plan, an employee who would ordinarily command an hourly rate of pay well in excess of the minimum for his work is assigned a low hourly rate (often the minimum) for the first hour (or the first 2 or 4 hours) of each day. This rate is designated as the regular rate: "time and one-half" based on such rate is paid for each additional hour worked during the workday. . . .
>
> (b) Such a division of the normal 8-hour workday into 4 straight time hours and 4 overtime hours is purely fictitious. . . .

29 C.F.R. § 778.501; *see also Walling v. Helmerich & Payne*, 323 U.S. 37 (1944).

Ms. Prevost's testimony does not support this conclusion. The Services compensation scheme as described by Ms. Prevost did not involve an arbitrary split of the workday into two 4-hour periods; rather, it involved a split into an 8-hour period and an overtime period. As noted above, Ms. Prevost testified that Plaintiff received "$10 an hour for 40 hours" and "$30 an hour for 28 hours." (Prevost Dep. at 21, Rec. Doc. 49-2 at 7). To qualify as a split-day plan, Plaintiff would have had to receive $10 an hour for 34 hours and $30 an hour for 34 hours, which is not the case here.

Because this testimony is the only evidence cited by Plaintiff in support of the claim that Defendants willfully violated FLSA, the Court agrees that the two-year statute of limitations applies, and all of Plaintiff's claims arising out of work performed before October 12, 2008 are barred. The Court grants summary judgment to Defendants on this issue.

4.      **Louisiana Whistleblower Statute**

The Louisiana Whistleblower Statute provides certain protections to employees who

threaten to disclose an employer's illegal activity:

> An employer shall not take reprisal against an employee who in
> good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or
> practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public
> body conducting an investigation, hearing, or inquiry into
> any violation of law.
>
> (3) Objects to or refuses to participate in an employment
> act or practice that is in violation of law.

La. Rev. Stat. § 23:967(A). The definition of "reprisal" includes "firing, layoff, loss of benefits,

or any other discriminatory action" taken as a result of protected actions. *Id.* § 23:967(C)(1).

"The Louisiana Whistleblower Statute targets serious employer conduct that violates the law."

*Fondren v. Greater New Orleans Expressway Com'n*, 03-1383 (La. App. 5 Cir. 4/27/04), 871 So.

2d 688, 691 (citing *Puig v.  Greater New Orleans Expressway Com'n*, 00-924 (La. App. 5 Cir.

10/31/00), 772 So.2d 842, 845, *writ denied*, 00-3531 (La. 3/9/01), 786 So.2d 731. "For an

employee to establish a claim under La. R.S. 23:967, she must prove that her employer

committed an actual violation of state law." *Stevenson v. Williamson*, 547 F. Supp. 2d 544 (M.D.

La. 2008), *aff'd*, 324 F. App'x 422 (5th Cir. 2009).

Defendants argue that Plaintiff's claims under this act must be dismissed, because

Plaintiff alleges that Services fired him for telling LaGreca that Mr. Lyons—a mere co-

worker—had violated the law by using illegal drugs on the premises. In other words, Defendants

argue that Plaintiff never encountered a violation of the law *by his employer*. Additionally,

16

Defendants argue that Plaintiff never threatened to disclose the alleged violation to a third party, nor did he provide information to a public body or refuse to participate in an illegal act or practice. Accordingly, Defendants argue that none of the requirements of § 23:967 are met in this case.

Plaintiff responds by arguing that he was terminated after LaGreca overheard "a telephone call in which Goulas accidentally dialed LaGreca while having a conversation with his wife Jennifer." (Rec. Doc. 49 at 12). In other words, Plaintiff argues that he was terminated after disclosing the alleged drug use to his wife. Plaintiff argues that this disclosure is sufficient to trigger protection under § 23:967(A)(1). Furthermore, Plaintiff argues that he disclosed the alleged violation to LaGreca during Plaintiff's termination meeting.

In response, Defendants argue first that disclosure to Plaintiff's wife is not the type of disclosure contemplated by the Whistleblower Act. *See Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210, 1215 (noting that the Act applies to employees who threaten to "publicize" or "report" serious violations of the law). Second, Defendants emphasize that under the statute, the disclosure must occur "after advising the employer of the violation of the law." La. Rev. Stat. § 23:967(A). In this case, Plaintiff claims that he made the disclosure before advising his employer of the alleged violation. Finally, Defendants reemphasize that the Whistleblower Act covers only serious violations committed by the employer, not illegal acts of a mere co-worker.

The Court agrees that Plaintiff's claims under the Whistleblower Act are legally flawed for the reasons indicated by Defendants. In particular, the timing of the disclosure and the identity of the alleged wrongdoer cause Plaintiff's circumstances to fall outside the protection of

17

the Act. The Court will grant summary judgment to Defendants on Plaintiff's claims under

§ 23:967.

**5.      Claims against LaGreca**

Finally, Defendants argue that all claims against LaGreca should be dismissed because

Plaintiff's employer was Services, not LaGreca. Defendants argue that this fact is undisputed

because Plaintiff admits it in his Amended Petition (Rec. Doc. 1-1 at p. 8, ¶ 2), and it is also

reflected in Plaintiff's pay records (Rec. Doc. 47-4 at 4-6). Plaintiff responds that its claims

against LaGreca are proper because under FLSA, "'[e]mployer' includes any person acting

directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.

§ 203(d). Furthermore, Plaintiff cites Supreme Court precedent holding that "economic reality"

should govern the determination of employer status under FLSA. *Goldberg v. Whitaker House

Coop.*, 366 U.S. 28, 33 (1961). Plaintiff cites various testimony indicating that LaGreca meets all

four standard factors under this economic reality test.[3] Defendants reply that basic corporate law

principles should shield LaGreca from liability for action he took as an officer of Services.

Defendants also dispute the relevance of certain testimony cited by Plaintiff.

As the Fifth Circuit has previously noted: "The overwhelming weight of authority is that

a corporate officer with operational control of a corporation's covered enterprise is an employer

along with the corporation, jointly and severally liable under FLSA for unpaid wages." *Donovan

v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (quoting *Donovan v. Agnew*, 712 F.2d

---

[3] Specifically those factors are whether the alleged employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010).

1509, 1511 (1st Cir. 1983) (internal quotation marks omitted); *see also Solis v. Universal Project Management, Inc.*, No. 08-1517, 2009 WL 4043362 (S.D. Tex. Nov. 19, 2009) (collecting cases). Accordingly, it is not clear that the claims against LaGreca in his individual capacity are inappropriate simply due to his status as an officer of the corporation. The Court will deny summary judgment on this highly fact dependent issue.

**IV.    CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment (Rec. Doc. 47) is GRANTED IN PART and DENIED IN PART. In particular, Defendants' motion is GRANTED with respect to Plaintiff's claims pre-dating October 12, 2008 and Plaintiff's claims under the Louisiana Whistleblower Statute, and DENIED with respect to all other claims.

New Orleans, Louisiana, this 10th day of May, 2013.

_____
UNITED STATES DISTRICT JUDGE